UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 5524 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| McDONALD'S USA, LLC, and | ) | |
| McDONALD'S CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants' motion [27] to dismiss is denied.

## STATEMENT

In this case, which is consolidated with *Deslandes v. McDonald's, USA, LLC*, case no. 17-cv-4857, plaintiff Stephanie Turner (like plaintiff Leinani Deslandes before her) alleges that defendants violated the Sherman Act by agreeing with franchisees not to hire each other's employees or each other's former employees for a period of six months after employment. (Familiarity with the allegations in *Deslandes* and with the Court's decisions in that case is assumed. The Court does not include the detailed allegations here, because defendants do not move to dismiss this case for failure to state a claim.) Plaintiff alleges that the no-hire clause caused her wages to be depressed such that she was paid less than she would have been paid absent the no-hire clause in the franchise agreements.

In their motion to dismiss, defendants argue that plaintiff lacks Article III standing as well as antitrust standing and that plaintiff's claim is barred by the statute of limitations.

### A.    Article III standing

Defendants first argue that plaintiff lacks standing under Article III.  Article III of the United States Constitution limits a federal court's jurisdiction to "Cases" and "Controversies," and "the irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016) (citations omitted).  A plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.  Thus, here, at the pleadings stage, allegations will suffice.

In this case, plaintiff alleges she "suffered reduced wages" due to the no-hire clause. (Complt. ¶ 18).  She alleges that the "fact that she could not even apply [for other positions at other McDonald's restaurants] also contributed to downward pressure on her own wages at the McOpCo, as she could not use a competing offer to negotiate better wages[.]"  (Complt. ¶ 66). She alleges the restraints "constrained competition" among McDonald's restaurants and "caused her wages to be depressed during her employment."  (Complt. ¶ 71).

Defendants argue that plaintiff suffered no injury in fact, but the Court does not agree. Defendants argue that plaintiff cannot have been injured by the no-hire clause unless she applied for and was rejected on account of the no-hire policy.  The argument misses the point of plaintiff's alleged injury:  plaintiff alleges she suffered depressed wages, which is to say the wages she was actually paid were less than the wages she would have been paid absent the allegedly-unlawful no-hire policy.  The loss of those wages is an injury in fact.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979) ("where petitioner alleges a wrongful deprivation of

2

her money . . . by reason of respondents' anticompetitive behavior, she has alleged an injury in her 'property' under § 4 [of the Clayton Act]"); *see also Milwaukee Police Assoc. v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) ("concrete financial injuries, namely deprivation of wages . . . are prototypical injuries for the purposes of Article III standing.").[1]

Plaintiff's claim is akin to a supplier who sells at a reduced price due to the anti-competitive behavior of a cartel of buyers. The Seventh Circuit has held "farmers who sold soybeans at allegedly depressed prices suffered injury sufficient to confer standing under Article III." *Sanner v. Board of Trade of City of Chi.*, 62 F.3d 918, 924 (7th Cir. 1995) ("The fact of a sale at an allegedly depressed price establishes discernable injury in a manner in which a failure to sell cannot."). Here, plaintiff alleges she sold her labor at an allegedly depressed price, and that is sufficient allegation of injury in fact.

Next, defendants argue that depressed wages cannot confer standing in this case, because such depressed wages are not fairly traceable to the alleged antitrust violation. Defendants argue that other factors, such as the unemployment rate, might have suppressed her wages and that plaintiff's allegation that the depressed wages were caused by the no-hire agreement is not plausible. Again, the Court disagrees. Plaintiff's causation allegations are plausible due to basic principles of economics: if fewer employers compete for the same number of employees, wages will be lower than if a greater number of employers are competing for those employees.[2] In

---

[1] That plaintiff may never be able to prove the quantity of such damages does not mean she has not suffered injury in fact. *See Blue Cross and Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 594 (7th Cir. 1998) ("We are not saying that Blue Cross did not in fact lose any money as a result of the division of markets. . . . [T]here is . . . , and here critically, a difference between an actual and a quantifiable harm and also between a quantifiable and a quantified harm—and only the last supports an award of damages.").

[2] Defendants argue that plaintiff's allegation that the no-hire clause depressed her wages is not plausible in light of the Court's conclusion in *Deslandes* that Deslandes had not stated a claim for a *per se* violation of the antitrust laws. The Court disagrees. The reason Deslandes had not

addition, "[f]actual disputes over the relative market significance" of the no-hire agreement versus other factors "should not be resolved on a motion to dismiss." *Sanner*, 62 F.3d at 926. Plaintiff has alleged an injury that is fairly traceable to defendants' alleged antitrust violation.

Thus, this Court agrees with courts that have concluded plaintiffs have standing to pursue antitrust claims based on no-hire agreements when they allege their wages were depressed by such agreements. *Blanton v. Domino's Pizza Franchising, LLC*, Case No. 18-13207, 2019 WL 2247731 at *3-4 (E.D. Mich. May 24, 2019) ("[Plaintiff] says that his own wages were depressed. . . . He asserts that his depressed wages were a direct result of the allegedly unlawful no-hire agreement . . . The Court finds that [plaintiff] has sufficiently alleged standing."); *see also Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp.3d 786, 793-94 (S.D. Ill. 2018).

In sum, plaintiff has adequately alleged standing by alleging the no-hire agreement depressed her wages. Whether she can *prove* that is a question for another day.

### B.     Antitrust standing

Defendants also state that plaintiff has not alleged antitrust injury. The Court disagrees.

In addition to injury in fact, a plaintiff asserting an antitrust claim "must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' act unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Supreme Court went on to explain that "[t]he injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick*, 429 U.S. at 489. Thus, in *Brunswick*, the plaintiffs could

---

alleged a *per se* violation was *not* that a no-hire agreement would be unlikely to depress wages but rather that the no-hire agreement was ancillary to an agreement that was procompetitive in that it enhanced the output of hamburgers.

not recover as damages additional profits they might have earned had their competitors gone out

of business. The Supreme Court explained:

> At base, [plaintiffs] complain that by acquiring the failing centers [defendant]
> preserved competition, thereby depriving [plaintiffs] of the benefits of increased
> concentration. The damages [plaintiffs] obtained are designed to provide them
> with the profits they would have realized had competition been reduced. The
> antitrust laws, however, were enacted for 'the protection of competition not
> competitors.' *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). It is
> inimical to the purposes of these laws to award damages for the type of injury
> claimed here.

*Brunswick*, 429 U.S. at 488. Thus, antitrust injury requires injury to competition.

Here, plaintiff has alleged injury to competition, namely the injury of depressed prices

(wages) to sellers (employees) due to anticompetitive behavior of buyers (employers). The

Seventh Circuit has explained why this type of injury is an injury to competition:

> Just as a sellers' cartel enables the charging of monopoly prices, a buyers' cartel
> enables the charging of monopsony prices; and monopoly and monopsony are
> symmetrical distortions of competition from an economic standpoint.

*Vogel v. American Soc. of Appraisers*, 744 F.2d 598, 601 (7th Cir. 1984); *cf. Mandeville Island

Farms v. American Chrystal Sugar Co.*, 334 U.S. 219 (1948) (sugar beet suppliers had antitrust

claim for price-fixing against sugar beet refiners); *see also Omnicare, Inc. v. UnitedHealth

Group, Inc.*, 524 F. Supp.2d 1031, 1040 (N.D. Ill. 2007) ("In a buyer's conspiracy case, a seller

sufficiently alleges antitrust injury by pleading that it has received excessively low prices from

members of the buyers' cartel.").

Accordingly, plaintiff has alleged antitrust injury in this case. *See Hunter v. Booz Allen

Hamilton, Inc.*, 418 F. Supp.3d 214, 223 (S.D. Ohio 2019) ("Plaintiffs alleged that the no-poach

agreements . . . 'did in fact suppress wages, benefit[s], and other aspects of compensation and

eliminate competition.' As such, Plaintiffs have pleaded . . . an injury of the type the antitrust

laws were intended to prevent[.]"); *In re: Papa John's Employee and Franchisee Employee

*Antitrust Litigation*, Case No. 18-cv-825, 2019 WL 5386484 at *9 (W.D. Ky. Oct. 21, 2019) ("Plaintiffs also sufficiently plead antitrust injury. Plaintiffs contend that the No-Hire provision is an agreement not to compete for labor and that the agreement had the purpose and effect of depressing wages and diminishing employment opportunities."); *In re: High-Tech Employee Antitrust Litigation*, 856 F. Supp.2d 1103, 1123 (N.D. Cal. 2012) ("In alleging that Defendants conspired to fix salaries at artificially low levels, Plaintiffs have alleged 'an example of the type of injury the antitrust laws are meant to protect against.'") (citation omitted); Phillip E. Areeda & Herbert Hovencamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 352a (3rd and 4th Editions, 2018 Cum. Supp. 2010-2017) ("Employees may challenge antitrust violations that are premised on restraining the employment market . . . Standing for employees thus parallels that for 'suppliers' generally[.]").

## C. Statute of limitations

Finally, defendants argue that plaintiff's claim is barred by the four-year statute of limitations applicable to antitrust claims. 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued."). Defendants' theory is that plaintiff's cause of action accrued no later than 2009 or 2010, when she alleges she first learned about the no-hire clause. (Complt. ¶ 66) ("In or around 2009 or 2010 . . . [plaintiff's] supervisor at the McOpCo restaurant told her she could not be hired at a franchise-owned McDonalds' without a release unless she first stopped working at the McOpCo for six months. The supervisor also informed [plaintiff] that the franchisee would not be permitted to speak with her without a release from the McOpCo.").

6

Failure to comply with a statute of limitations is an affirmative defense. *See United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003); Fed.R.Civ.P. 8(c)(1). A plaintiff need not plead around an affirmative defense, and the Court may not dismiss on the basis of an affirmative defense unless the plaintiff alleges, and thus admits, the elements of the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *United States Gypsum*, 350 F.3d at 626. Here, plaintiff's allegations do not establish that her claim is time-barred.

"The period of limitations for antitrust litigation runs from the most recent injury caused by the defendants' activities rather than from the violation's inception." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)). In *Zenith Radio*, the Supreme Court said "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and . . . as to those damages the statute of limitations runs from the commission of the act." *Zenith Radio*, 401 U.S. at 338. In *Xechem*, the Seventh Circuit cited *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188-191 (1997) as "describing how this approach works[.]" *Xechem*, 372 F.3d at 902. In *Klehr*, the Supreme Court explained:

> Antitrust law provides that, in the case of a 'continuing violation,' say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, 'each overt act that is part of the violation and that injures plaintiff,' *e.g., each sale to the plaintiff*, '*starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.*' But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period.

*Klehr*, 521 U.S. at 189 (emphasis added) (citations omitted). In other words, in a sellers' cartel, each additional sale is an injury that starts the statute of limitations for that injury, and, in a buyers' cartel, each purchase is an injury that starts the statute of limitations for that injury.

Analogously, in this case, each time plaintiff was paid a depressed wage for her labor, she was injured and the four-year statute of limitations for that injury began.[3]

Here, plaintiff alleges that she was paid a depressed wage for her labor as recently as September 2018. (Complt. ¶¶ 70-71). She filed her complaint on August 15, 2019. Plaintiff has not alleged (and thus admitted) the ingredients of defendants' statute-of-limitations affirmative defense, and the Court will not dismiss her claim on statute-of-limitations grounds.

For all of these reasons, defendants' motion to dismiss is denied.

SO ORDERED.

ENTERED:  April 24, 2020

_____
JORGE L. ALONSO
United States District Judge

---

[3] This does not mean a plaintiff can recover for depressed wages that were paid to her more than four years before filing suit. *See Klehr*, 521 U.S. at 189 ("But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period.").